UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-14205-Civ-JORDAN
MAGISTRATE JUDGE P. A. WHITE

DAVID BREWSTER,                    :

        Petitioner,                :

v.                                 :        REPORT OF
                                            MAGISTRATE JUDGE
WALTER A. McNEIL,[1]               :

        Respondent.                :

_____

Introduction

    David Brewster has filed a pro se petition for writ of habeas
corpus pursuant to 28 U.S.C. §2254, challenging the
constitutionality of his conviction for scheme to defraud a
financial institution entered on a jury verdict in Indian County
Circuit Court, case no. 2002-1339.

    This Cause has been referred to the undersigned for
consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and
Rules 8 and 10 of the Rules Governing Section 2254 Cases in the
United States District Courts.

    For its consideration of this petition with supporting
memorandum (DE#5) and supplements thereto (DE#s7,29,30,31), the
Court has the response of the state to an order to show cause with
multiple exhibits (DE#s23,25,26), and the petitioner's reply

_____

    [1]Walter A. McNeil, has replaced James R. McDonough as Secretary of the
Florida Department of Corrections, and is now the proper respondent in this
proceeding. McNeil should, therefore, "automatically" be substituted as a party
under Federal Rule of Civil Procedure 25(d)(1). The Clerk is directed to docket
and change the designation of the Respondent.

(DE#27).

Despite the fact that the petitioner was a licensed Delaware lawyer since 1970 (DE#5:Ex.N), and construing the arguments liberally as afforded *pro se* prisoners, it appears the petitioner makes the following claims:

1. He is actually innocent, and the court erred in denying his judgment of acquittal where the prosecutor failed to prove the elements of the offense charged. (DE#1:6:Memo:1).

2. The court erred in permitting the prosecutor to introduce highly prejudicial evidence that the petitioner's bank account had an overdraft of $420.00 when it was closed. (DE#1:7:Memo:5).

3. He was denied effective assistance of counsel at sentencing, where his lawyer was unprepared, failed to object to his adjudication as a habitual offender, and failed to present mitigating evidence concerning the circumstances of the offense of conviction, the petitioner's background, and history. (DE#1:9:Memo:8).

4. The prosecutor engaged in prosecutorial misconduct during the sentencing proceeding by testifying falsely that he had prosecuted the petitioner previously. (DE#1:10:Memo:14).

5. Judge Joe Wild was prejudiced and biased against the petitioner, and committed reversible error by denying the petitioner's request for substitute counsel, request for a continuance, motion for a directed verdict, and for failing to consider the PSI and hold a separate habitual offender proceeding. (DE#1:11:Memo:17).

<u>Procedural History</u>

The procedural history of the underlying state court conviction reveals as follows. On November 13, 2002, the petitioner was arrested. (DE#25:Ex.A). Shortly thereafter he was granted an emergency motion to set bond and released on furlough for a period of 51 hours in order to make funeral arrangements and attend services for his wife who had just passed away. (DE#25:Ex.B).

On December 3, 2002, the petitioner was charged by Information with knowingly executing, or attempted to execute, a scheme or artifice to defraud a financial institution, subsidiary, or service corporation or other entity authorized by law to extend credit, or to obtain any of the monies, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, subsidiary, or service corporation or other entity authorized by law to extend credit, by means of false or fraudulent pretenses, representations, or promises, in violation of <u>Fla.Stat.</u> §655.0322(6). (DE#25:Ex.D). The petitioner failed to appear for arraignment and a bench warrant was issued. (DE#25:Ex.E). It appears from the record that after his furlough ended, the petitioner absconded to California where he resided until he was apprehended and transferred back to Indian River County. (DE#25:Ex.F; DE#26:216-218). He proceeded to trial *pro se* with the assistance of standby counsel, and was found guilty as charged following a jury verdict. (DE#25:Ex.J).

Prior to sentencing, the petitioner was offered counsel, at which time he accepted the appointment of the Public Defender, and Assistant Public Defender, Adrienne Bucchi, represented the petitioner at sentencing. (DE#25:Ex.K). The petitioner was adjudicated guilty, and sentenced as a habitual felony offender to

a term of seven years imprisonment, followed by eight years of probation. (DE#26:218-219).

The petitioner appealed, raising the following two claims:

> 1. The trial court erred in denying the defendant's motion for judgment of acquittal where no financial institution was defrauded when the defendant uttered three checks on a closed account.
>
> 2. The trial court erred in permitting the prosecutor to adduce evidence that the bank account had an overdraft of $420.00 when it was closed.

On May 3, 2006, the Fourth District Court of Appeal *per curiam* affirmed the petitioner's conviction without written opinion. Brewster v. State, 930 So.2d 628 (Fla. 4 DCA 2006)(table); (DE#25:Ex.Q). The petitioner's motion for rehearing and to recall the mandate were denied on June 21, 2006. (DE#25:U). The judgment of conviction became final, for purposes of the AEDPA's one year statute of limitations, at the latest on August 3, 2006, ninety days after the opinion affirming the conviction was issued at the conclusion of the petitioner's direct appeal.[2]

Prior to his judgment becoming final, the petitioner returned to the state court filing a motion to disqualify the trial court judge from presiding over any future hearings in the petitioner's case. (DE#25:Ex.Y). On August 7, 2006, the trial court summarily

---

[2]For federal purposes, a conviction is final when a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied. Griffith v. Kentucky, 479 U.S. 314, 321, n.6 (1986); accord, Bond v. Moore, 309 F.3d 770 (11 Cir. 2002); Coates v. Byrd, 211 F.3d 1225 (11 Cir. 2000). Ordinarily, a petition for writ of certiorari must be filed within 90 days of the date of the entry of judgment, rather than the issuance of a mandate.  Supreme Court Rule 13.

denied the motion on the basis that it was legally insufficient. (DE#25:Ex.Z).

While his motion to disqualify was pending, the petitioner filed a petition for writ of prohibition and amendment thereto with the Fourth District Court of Appeal, requesting that the trial judge be disqualified from presiding over the petitioner's case. (DE#25:Ex.AA). On August 31, 2006, the petition was denied on the merits. (DE#25:Ex.CC). Rehearing was denied on November 9, 2006. (DE#25:Ex.EE).

In the interim, during the pendency of the above writ with the appellate court, the petitioner returned to the state court filing a motion to correct illegal sentence and amendment thereto pursuant to <u>Fla.R.Cr.P.</u> 3.800(c). (DE#25:Exs.FF-GG). The motion was denied on August 25, 2006, and no appeal therefrom appears to have been filed. (DE#25:Ex.HH).

A few months later, the petitioner next filed his first motion for postconviction relief and amendment thereto pursuant to <u>Fla.R.Cr.P.</u> 3.850, raising essentially the same claims raised in this federal habeas petition. (DE#25:Ex.II; DE#5). Following the state's response thereto, the trial court entered a lengthy, detailed order denying the claims raised in this federal petition. (DE#5:Ex.E). The petitioner appealed, and the denial was *per curiam* affirmed without written opinion and without requiring a response from the state. <u>Brewster v. State</u>, 956 So.2d 1196 (Fla. 4 DCA 2007)(table); (DE#25:Ex.MM). The mandate issued on June 15, 2007. (DE#25:Ex.NN). On June 27, 2007, the petitioner filed this federal habeas corpus petition in the Middle District of Florida,[3] which in

---

[3]<u>See</u>: <u>Adams v. U.S.</u>, 173 F.3d 1339 (11 Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

turn, entered an Order transferring the case to this Court. (DE#5).

The respondent correctly concedes that this petition was filed within the one-year limitations period of 28 U.S.C. §2244, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Artuz v. Bennett, 531 U.S. 4 (2000) (pendency of properly-filed state postconviction proceedings tolls the AEDPA limitations period).

Issues raised in a federal habeas corpus petition must have been fairly presented to the state courts and thereby exhausted. Anderson v. Harless, 459 U.S. 4 (1982); Hutchins v. Wainwright, 715 F.2d 512 (11 Cir. 1983). Exhaustion requires that a claim be pursued in the state courts through the appellate process. Leonard v. Wainwright, 601 F.2d 807 (5 Cir. 1979). Both the factual substance of a claim and the federal constitutional issue itself must have been expressly presented to the state courts to achieve exhaustion for purposes of federal habeas corpus review. Baldwin v. Reese, 541 U.S. 27 (2004); Gray v. Netherlands, 518 U.S. 152 (1996); Duncan v. Henry, 513 U.S. 364 (1995); Picardy v. Connor, 404 U.S. 270 (1971). A petitioner is required to present his claims to the state courts such that they are permitted the "opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim." Picardy v. Connor, 404 U.S. 270-275-77 (1971). Exhaustion is ordinarily accomplished on direct appeal. If not, in Florida, it may be accomplished by the filing of a Rule 3.850 motion, and an appeal from its denial; Leonard v. Wainwright, 601 F.2d 807, 808 (5 Cir. 1979), or, in the case of a challenge to a sentence, by the filing of a Rule 3.800 motion, and an appeal from its denial. See Caraballo v. State, 805 So.2d 882 (Fla. 2 DCA 2001). A claim of ineffective assistance of appellate counsel must be raised by petition for writ of habeas corpus in the appropriate district court

of appeal.  <u>State v. Dist. Ct. of Appeal, First Dist.</u>, 569 So. 2d. 439, 442 n.1 (Fla. 1990). These principles will be discussed when relevant in connection with the petitioner's individual claims *infra*.

<u>Discussion of the Claims</u>

Turning to the merits of the claims raised in the collateral proceeding, Section 104(d) of the AEDPA [28 U.S.C. §2254(d)] sets out a significant new restriction upon the ability of federal courts to grant habeas corpus relief. It provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the claim --
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as deter-mined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In <u>Williams v. Taylor</u>, 529 U.S. 362 (1999), the Supreme Court interpreted this provision as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

7

"Clearly established federal law" refers to the holdings of the United States Supreme Court as of the time of the relevant state court decision. <u>Putnam v. Head</u>, 268 F.3d 1223, 1241 (11 Cir. 2001). A state court's decision is "contrary to" clearly established federal law if the state court 1) applied a rule that contradicts United States Supreme Court case law, or 2) arrived at a result different from that reached in a United States Supreme Court decision when faced with materially indistinguishable facts. <u>Id</u>.; <u>see also</u>, <u>Fugate v. Head</u>, 261 F.3d 1206, 1215-16 (11 Cir. 2001). A state court arrives at an "unreasonable application" of clearly established federal law if it 1) unreasonably applies a correct legal principle for Supreme Court case law to the facts of a petitioner's case, or 2) unreasonably extends or declines to extend a legal principle from Supreme Court case law to a new situation. <u>Id</u>. In this context, an "unreasonable application" is an "objectively unreasonable" application. <u>Williams v. Taylor</u>, <u>supra</u> at 409.

The Eleventh Circuit has stressed the importance of this new standard, stating that the AEDPA "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." <u>Crawford v. Head</u>, 311 F.3d 1288, 1295 (11 Cir. 2002). Specifically, the AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal 'retrials' and to ensure that state court convictions are given effect to the extent possible under law." <u>Crawford</u>, <u>supra</u> at 1295, <u>quoting</u> <u>Bell v. Cone</u>, 535 U.S. 685 (2002).

In **claim one**, the petitioner asserts that he is actually innocent, and the court erred in denying his judgment of acquittal

where the prosecutor failed to prove the elements of the offense charged. (DE#1:6:Memo:1). The thrust of the petitioner's argument appears to be that the prosecutor failed to establish that the bank was defrauded because checks drawn on the closed bank account were never honored by the bank. (Id.).

A habeas petitioner attempting to establish "actual innocence" must meet a high standard. Bousley v. United States, 523 U.S. 614 (1998). See also House v. Bell, ___ U.S. ___, 126 S.Ct. 2064 (2006). A petitioner must demonstrate that "in light of all the evidence, 'it is more likely than not that no reasonable juror would have convicted him.'" Bousley, supra at 623, quoting, Schlup v. Delo, 513 U.S. 298, 327-328 (1995). To be credible, a claim of actual innocence requires the petitioner to "support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." Schlup v. Delo, 513 U.S. at 324. All things considered, the evidence must undermine the Court's confidence in the outcome of the trial. Id. at 316.

In this federal proceeding, the petitioner has come forward with no new reliable evidence to support his claim of actual innocence. Briefly, the evidence adduced at trial reveals as follows. The petitioner's conviction arises from the uttering of three checks to Perry Wright, Safe Harbor, and Patricia Curzio, which were drawn on a closed bank account at SunTrust Bank.[4] Perry White testified that the petitioner gave him a check for $1,475.00 in payment of a lease on an apartment, but that the check was returned to Wright with a notation from the bank that the account

---

[4] The three checks were introduced into evidence at trial.

9

on which it had been drawn had been closed. (DE#26:110,112). When Wright confronted the petitioner, he indicated it must be a mistake, and gave Wright $300.00 in cash towards the security deposit on the apartment. (DE#26:113-116). The petitioner and his wife resided in the apartment for several months until they were evicted. (Id.).

Mary Mazzarella, the manager of Harbor Storage, testified that she rented a storage unit to the petitioner, who paid for the rental with a $190.00 check, which the bank did not honor because the account was previously closed. (DE#26:118,123). Thereafter, she wrote to the petitioner, but the letter was returned as undeliverable. (DE#26:122).

Nancy Sapey testified that she leased a condominium belonging to Patricia Curzio to the petitioner. (DE#26:126-127). The petitioner gave Sapey a $2,200.00 check to cover the first and last month's lease, as well as, the security deposit. (DE#26:133-134). Like the other checks, the bank also refused to pay Sapey's check on the basis that the account had been previously closed. (DE#26:134).

Donna Trieskey, Vice-President of Operations and Records Custodian with SunTrust Bank testified that the petitioner's bank account had been closed on March 8, 2002, and there was no bank activity on the account during the months of August, September, and October, 2002. (DE#26:150-151). Over the petitioner's objection, the prosecutor was permitted to introduce evidence that the petitioner's checking account statement showed there was a total overdraft balance of $420.88, which had later been written off by the bank in order to close out the account. (DE#26:140-142,144,152-153). According to bank policy, an account which maintains a negative balance for over 45 days is closed. (DE#26:153). Trieskey explained

10

that the overdraft balance on the account was due in large part to bank charges and fees, with "possibly one or two entries made by the client [petitioner]." (DE#26:153).

The strong and unequivocal testimony of the three witnesses, together with the bank's vice-president, clearly undermines the petitioner's claim of actual innocence. No evidence whatever has been presented in this collateral proceeding to establish a personal vendetta by the prosecutor, the court, or to otherwise establish the petitioner's innocence.

As will be recalled, the petitioner was specifically charged with violating <u>Fla.Stat.</u> §655.0322(6) (2002), which provides as follows:

> Any person who knowingly executes, or attempts to execute, a scheme or artifice to defraud a financial institution, subsidiary, or service corporation or any other entity authorized by law to extend credit, or to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, subsidiary, service corporation, or any other entity authorized by law to extend credit, by means of false or fraudulent pretenses, representations, or promises, is guilty of a felony of the second degree, punishable as provided in <u>Fla.Stat.</u> §775.082, §775.083, and §775.084.

<u>Fla.Stat</u>. §655.0322(6) (2002).

In the state forum, the jury was instructed that in order to convict the petitioner as charged, it must prove: (1) that the petitioner engaged in a systematic ongoing course of conduct; (2) that the petitioner did so with either the intent to defraud a

11

financial institution or the intent to obtain or attempt to obtain property, monies, funds or credits from a financial institution; (3) that the petitioner's course of conduct involved fraudulent pretenses, promises or representation; and (4) that SunTrust is a financial institution, defined as a state trust company, a state or national bank, a state or federal association or a state or a federal credit union. (DE#26:190).

Florida and federal courts employ the same test for the sufficiency of the evidence: that is, whether a "rational trier of fact could have found proof of guilt beyond a reasonable doubt." Melendez v. State, 498 So.2d 1258, 1261 (Fla. 1986), citing, Jackson v. Virginia, 443 U.S. 307 (1979); Johnson v. Alabama, 256 F.3d 1156, 1172 (11th Cir. 2001). As previously narrated in this Report, the evidence adduced at trial established that the petitioner had a checking account with SunTrust Bank, a financial institution, which was closed by the bank in April 2002. During September and October 2002, the petitioner wrote three checks from that account, representing that the bank would honor those checks, and intending that the three individuals previously mentioned would receive the monies from the bank. Through his actions, knowing there were no funds available in the account to cover the checks as the account had been closed, the petitioner intended to defraud the bank by attempting to obtain monies from the bank. Thus, it is readily apparent that the trial court did not commit reversible error in denying the petitioner's motion for judgment of acquittal, nor has the petitioner made a colorable showing of actual innocence.

Under these circumstances, where there was ample evidence presented to allow a rational trier of fact to conclude that the petitioner was guilty as charged, the state courts' determinations that the petitioner was not entitled to relief on his claim of

actual innocence or in denying his motion for judgment of acquittal is not in conflict with clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Relief must therefore be denied pursuant to 28 U.S.C. §2254(d). <u>Williams v. Taylor</u>, 529 U.S. 362 (2000).

In **claim two**, the petitioner asserts that the court erred in permitting the prosecutor to introduce highly prejudicial evidence that the petitioner's bank account had an overdraft of $420.00 at the time it was closed. (DE#1:7:Memo:5).

The respondent first argues correctly that this claim is unexhausted because it was only raised in the petitioner's initial brief on direct appeal as a violation of state law, supported only by citation to Florida cases and rules, and therefore has not been exhausted for purposes of federal habeas corpus review. <u>See</u>, <u>e.g.</u>, <u>Baldwin v. Reese</u>, <u>supra</u>; <u>Duncan v. Henry</u>, 513 U.S. 364 (1995)(claim of evidentiary error not exhausted for purposes of federal review where presented to the state courts only as a violation of state law, and not expressly as a violation of due process guaranteed by the Fourteenth Amendment).

Moreover, as the respondent also correctly contends, dismissal of an unexhausted federal claim is not warranted where further efforts to exhaust the claim in state court would be futile. <u>Givens v. Green</u>, 12 F.3d 1041 (11 Cir. 1994). Since any further attempts by the petitioner to return to the state forum to seek additional collateral review would be dismissed as both untimely and successive, it would be futile to allow him an opportunity to do so, so this claim is thus procedurally defaulted from federal review. <u>Collier v. Jones</u>, 910 F.2d 770, 773 (11 Cir. 1990)(where dismissal

to allow exhaustion of unexhausted claims would be futile due to state procedural bar, claims are procedurally barred in federal court as well). In this case, the petitioner has failed to establish cause or prejudice arising from this defaulted claim. Nevertheless, the claim fails on the merits and thus will be discussed briefly *infra.*

The record reveals that the state sought to introduce the petitioner's April 2002 SunTrust bank statement to establish that the $420.88 overdraft in the petitioner's account was written off by the bank when it was closed. (DE#26:152). According to Trieskey, SunTrust's bank policy is to close an account which maintains an overdraft for more than forty-five days. (DE#26:153). The petitioner objected to the admission of the statement on the basis that it was irrelevant, and that its probative value was outweighed by its prejudicial effect. (DE#26:140-141). The petitioner was willing to stipulate that the account had been closed, but not on what date it was closed. (Id.:140,142). The prosecutor responded, arguing that the statement showed the account was closed for a reason and not due to a mistake on the bank's part. (Id.:142-143).

Over defense objection, the court admitted the April 2002 bank statement on the following finding:

> ...I'll allow the April 4, 2002 statement and the signature card over your objection. I think it's relevant to, first of all, I think the State, it's extremely relevant for the State to show that the account was closed and that you [petitioner], you were notified of the closure and the closure was due to, to an overdraft or money, you know, owed to the bank.

(Id.:145).

14

Federal courts will grant habeas corpus relief on the basis of a state evidentiary ruling only if the ruling adversely affects the fundamental fairness of the trial. Estelle v. McGuire, 502 U.S. 62 (1991); Sims v. Singletary, 155 F.3d 1312 (11 Cir. 1998). When it `is claimed that a habeas corpus petitioner was denied a fair trial due to the admission of prejudicial or inflammatory evidence, a federal court begins with the general proposition that review of state evidentiary rulings is limited, but that faced with a claim of fundamental unfairness the question becomes constitutional rather than evidentiary, and the Court must determine whether there occurred error of such magnitude as to deny the petitioner fundamental fairness, violating the right to a fair trial. Futch v. Dugger, 874 F.2d 1483, 1487 (11 Cir. 1989); Osborne v. Wainwright, 720 F.2d 1237, 1238 (11 Cir. 1983). Moreover, such rulings under federal law are subject to the harmless error analysis and will support habeas relief only if the error "had substantial and injurious effect or influence in determining the jury's verdict." Id., quoting Brecht v. Abrahamson, 507 U.S. 619, 623 (1993).

In this case, the court properly concluded that the admission of the bank statement was relevant to the state's case. Moreover, even if there was error in its admission, no showing has been made that its admission tainted the fundamental fairness of the petitioner's trial. The petitioner was able to thoroughly cross-examine the bank's witness regarding the contents of the April statement, including how it reflected no activity on the account since the prior month, and that the negative balance was due in large part to bank charges. (Cr-DE#26:150-151, 153-154). Thus, this claim does not warrant habeas relief.

Under these circumstances, the state court's summary denial of

15

the claim on direct appeal and/or in the Rule 3.850 proceeding was not contrary to or an unreasonable application of federal constitutional principle and therefore should not be disturbed here. Williams v. Taylor, supra.

In **claim three**, the petitioner asserts that he was denied effective assistance of counsel[5] at sentencing, where his lawyer was unprepared, failed to object to his adjudication as a habitual offender, and to present mitigating evidence concerning the circumstances of the offense of conviction, the petitioner's background, and history. (DE#1:9:Memo:8). None of these claims individually or cumulatively entitle the petitioner to habeas corpus relief.

---

[5]In order to prevail on a claim of ineffective assistance of counsel, the petitioner must establish: (1) deficient performance - that his counsel's representation fell below an objective standard of reasonableness; and (2) prejudice - but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668 (1984); Chandler v. United States, 218 F.3d 1305 (11th Cir. 2000)(en banc). The standard is the same for claims of ineffective assistance on appeal. Matire v. Wainwright, 811 F.2d 1430, 1435 (11 Cir. 1987). A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied. Id. at 697; Waters v. Thomas, 46 F.3d 1506, 1510 (11 Cir. 1995). Prejudice in the sentencing context requires a showing that the sentence was increased due to counsel's error. Glover v. United States, 531 U.S. 198, 203-204 (2001).

The Eleventh Circuit reviews an attorney's performance with deference, and looks not for "what is prudent or appropriate, but only what is constitutionally compelled." Hardwick v. Crosby, 320 F.3d 1127, 1161 (11 Cir. 2003), citing Chandler v. United States, 218 F.3d 1305, 1313 (11 Cir. 2000) (en banc)(When assessing a lawyer's performance, "Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment."). The court's role in reviewing ineffective assistance of counsel claims is not to "grade a lawyer's performance; instead, [the court] determine[s] only whether a lawyer's performance was within "the wide range of professionally competent assistance." Van Poyck v. Florida Dept. of Corrections, 290 F.3d 1318, 1322 (11 Cir.), cert. den'd,___ U.S. ___, 123 S.Ct. 70 (2002), quoting, Strickland v. Washington, supra at 690. Review of counsel's conduct is to be highly deferential. Spaziano v. Singletary, 36 F.3d 1028, 1039 (11 Cir. 1994), and second-guessing of an attorney's performance is not permitted. White v. Singletary, 972 F.2d 1218, 1220 (11 Cir. 1992)("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); Atkins v. Singletary, 965 F.2d 952, 958 (11 Cir. 1992).

The petitioner first claims that counsel was unprepared for the sentencing proceeding. The court, adopted the state's response to the Rule 3.850 motion, applied <u>Strickland</u>, and denied the claim on the finding that the sentencing court was aware of much of the mitigation evidence through testimony and as contained in the PSI. (DE#1:Ex.E). The state court found that the judge at sentencing was more concerned with the petitioner's extensive criminal history, with the instant conviction being his twelfth felony conviction. (<u>Id</u>.).

The trial court's adoption of this argument was upheld by the state appellate court. <u>Brewster v. State</u>, <u>supra</u>. For the reasons expressed, no deficient performance or prejudice has been established arising from counsel's alleged failure to be prepared for the petitioner's sentencing proceeding, so the state courts' denial of this claim of ineffective assistance comported with <u>Strickland</u> <u>supra</u>, and the same finding should be made here. <u>Williams v. Taylor</u>, <u>supra</u>.

The petitioner also asserts that counsel failed to review and consider the petitioner's mitigation memorandum he prepared outlining his past accomplishments, including his membership as a lawyer in the Delaware Bar, a securities commissioner, successful C.E.O. of a publicly owned corporation, and his productive activities in California from 2002 through 2004.

The claim was denied by the state trial court who adopted the state's response, which argued in pertinent part, as follows:

> ...Any favorable inferences that could be drawn by the fact that he [petitioner] was a Deputy Attorney would be outweighed by the fact that he was a disbarred attorney.

17

As to the fact that he was a securities commissioner and successful CEO of a publicly owned corporation these fact are again outweighed by his prior record which was outlined in the Presentence Investigation and the sentencing hearing conducted by the Court...

The petitioner has failed to establish how the presentation of this evidence would have affected the outcome of the sentencing proceeding.

\*   \*   \*

The petitioner's 'productive activities' in California are overshadowed by the fact that he was on a bench warrant status and a fugitive from justice at the time...Additionally, petitioner fails to allege what productive activities he was involved with.

(Cr-DE#25:Ex.JJ).

That denial was affirmed without written opinion by the appellate court. Brewster v. State, supra. As summarized in detail above, the court was aware of the petitioner's past accomplishment, as well as, his extensive criminal history, both adduced through testimony and the PSI. During allocution, the petitioner could have presented these arguments, but instead chose to justify his actions on the basis that he was in a "desperate situation" as his wife was dying and they were "moving around quite a bit." (DE#26:217). Under these circumstances, the petitioner has failed to establish how further argument in this regard would have affected the outcome of the sentencing proceeding. Thus, he cannot establish prejudice arising from counsel's failure to further pursue this issue at sentencing. Consequently, the state court's denial of this claim was neither contrary to nor an unreasonable application of federal constitutional law and should therefore not be disturbed here.

Williams v. Taylor, supra.

The petitioner next asserts that counsel failed to object to the fact that no separate proceeding was conducted to determine whether he qualified as a habitual felony offender.

The state court denied this claim on the finding that the prosecutor complied with Florida law in that it had established prior to sentencing that the petitioner qualified as a habitual felony offender. (DE#26:Ex.JJ). That decision was subsequently affirmed without written opinion. Brewster v. State, supra. Even if counsel had so objected, it is clear from the sentencing proceedings that the parties were given an opportunity prior to sentencing to investigate the petitioner's status as a habitual felony offender. At sentencing, counsel's argument against the habitual felony offender designation were overruled by the court prior to its finding that the petitioner should properly be classified as such. In fact, testimony was heard from a state prosecutor who established that the petitioner had at least three prior felony convictions which supported the enhanced sentence. Under these circumstances, the petitioner has failed to establish prejudice pursuant to Strickland arising from counsel's failure to pursue this claim. Even if counsel had done so, no showing has been made that the petitioner's habitual felony offender adjudication was unlawful. Thus, the state's court denial of the claim was in accordance with federal constitutional principles and should not be disturbed here. Williams v. Taylor, supra.

The petitioner also claims that counsel failed to argue that his adjudication as a habitual felony offender is permissive and not mandatory for the protection of the public. In denying the claim, the state court specifically found as follows:

...the Defendant is under the misimpression
that sentencing under the habitual offender
statute is permissive requiring a finding that
the sentence is necessary for protection of the
public. This is no longer the law in Florida.
Habitual offender sentencing became mandatory
for qualified offenses committed on or after
October 1, 1995. Consequently, for the
Defendant's instant offense committed in 2002,
the court was not required to make a finding
that the sentence was necessary for protection
of the public. A written finding is only
required to state reasons why the court did not
impose the mandatory habitual offender
sentence. §775.084(3)(a)6. (2001).

That denial was affirmed without written opinion. <u>Brewster v.
State</u>, <u>supra</u>.

Contrary to the state court's finding, it appears that in
Florida, sentencing under the habitual offender statute is
permissive, not mandatory. <u>See</u> <u>State v. Matthews</u>, 891 So.2d 479, 489
(Fla. 2004), <u>citing</u>, <u>State v. Hudson</u>, 698 So.2d 831, 832 (Fla.
1997); <u>Burdick v. State</u>, 594 So.2d 267, 267-68 (Fla. 1992). In
<u>Matthews</u>, the Florida Supreme Court reiterated its prior finding
that under "section 775.084, the sentencing court must sentence a
habitual offender as provided, unless the court decides that
'sentence under this section is not necessary for the protection of
the public.'" <u>State v. Matthews</u>, <u>supra</u>, <u>citing</u>, <u>Mack v. State</u>, 823
So.2d 746, 751 (Fla.2002) (<u>quoting</u> §775.084(4)(c), <u>Fla.Stat.</u>
(1989)). Further, "[i]f the court finds that a habitual offender
sentence is not necessary, 'sentence shall be imposed without regard
to this section.'" <u>Id.</u> (<u>quoting</u>, §775.084(4)(c), <u>Fla. Stat.</u> (1989)).
Accordingly, once the sentencing court has determined that a
defendant meets the habitual offender criteria, "it must make the
decision whether to sentence him or her as such and must either
impose a habitual offender sentence or impose sentence without

20

regard to the habitual offender statute." <u>State v. Matthews</u>, <u>supra</u>.

Although it appears from the record that the trial court erred as to the state of Florida law when denying the claim in the Rule 3.850, the petitioner nevertheless is entitled to no relief on the claim. The record reveals that the trial court was aware of its discretion to impose a habitual felony offender sentence. In considering the issue, the trial court found a habitual felony offender sentence was proper in order to protect the public because when the petitioner was at liberty, he was "writing bad checks, embezzling, swindling" and the like. (DE#26:219). Although it denied the state's 15-year recommended sentence, it did, however, impose a seven year term of imprisonment as a habitual felony offender. Thus, even if counsel had objected, no showing has been made that further argument before the sentencing court regarding the fact that the court had the discretion whether to impose the habitual felony offender sentence would have altered the outcome of the proceeding. In other words, the petitioner cannot establish that he would not have been adjudicated a habitual felony offender, and therefore cannot establish prejudice pursuant to <u>Strickland</u>, <u>supra</u>. He is thus entitled to no relief on this claim.

The petitioner next asserts that counsel was ineffective for failing to object to the prosecutor's testimony at sentencing regarding the petitioner's prior convictions. The record reveals that Assistant State Attorney Ed Taylor identified the petitioner at sentencing as the individual who had been prosecuted by his office on several occasions in the past. (DE#26:205). Attorney Taylor specifically recalled that two of the prior state court convictions were the subject of collateral motions for postconviction relief where he and the petitioner were present at an evidentiary hearing. (DE#26:205-210). The motions, however, were

21

ultimately denied. (Id.). He also recalled prosecuting and obtaining a conviction of the petitioner in a third case, no. 98-1211. (Id.). Moreover, the petitioner did not object to counsel's representation that he had reviewed all the prior convictions as contained in the PSI with the petitioner and acknowledged that the petitioner had the requisite number of prior convictions to support the enhanced sentence. (Id.209-210). Additionally, certified copies of the convictions were entered into evidence without objection. (DE#26:208). The petitioner's counsel argued, however, that the court had the discretion whether to impose a habitual felony offender sentence. (Id.216). Specifically, counsel suggested that a habitual offender sentence was not warranted given that the petitioner had not committed any crimes while residing in California after the passing of his wife, and that the checks at issue here were written because the petitioner was faced with a terminally ill wife and was trying to make ends meet during that stressful period. (Id.).

Even if counsel had objected to the prosecutor's testimony, no showing has been made that absent such testimony, the petitioner would have not qualified as a habitual felony offender. There were certified convictions introduced into evidence in support of the enhancement. The petitioner has not shown that these prior convictions were unlawfully entered nor that they have since been vacated. Under these circumstances, the petitioner has failed to establish prejudice arising from counsel's failure to object to the prosecutor's testimony. The state court's denial of this claim was not unreasonable and should not be disturbed here. Williams v. Taylor, supra.

Likewise, to the extent the petitioners means to argue that counsel failed to object to the contents of the PSI, he has provided

22

no specifics regarding exactly what information was objectionable. Such a bare and conclusory allegation, without record support, must fail. <u>Machibroda v. United States</u>, 368 U.S. 487 (1962). If the petitioner means to argue that counsel should have objected to the PSI's conclusion in one instance that the petitioner failed to pay child support, that claim is belied by the record. (DE#26:208-210). Under these circumstances, the petitioner has failed to demonstrate what further argument counsel could have proffered in this regard. Thus, no prejudice has been established pursuant to <u>Strickland</u>. Consequently, the state's courts rejection of the claim is not unreasonable under federal constitutional principles and should not be disturbed here.

In **claim four**, the petitioner asserts that the prosecutor engaged in prosecutorial misconduct during the sentencing proceeding by testifying falsely that he had prosecuted the petitioner previously. (DE#1:10:Memo:14). The thrust of the petitioner's argument appears to be that the state prosecutor's testimony was motivated by a malicious and personal vendetta.

The standard for federal habeas corpus review of a claim of prosecutorial misconduct is whether the actions rendered the trial fundamentally unfair. <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 642-45 (1974); <u>Hall v. Wainwright</u>, 733 F.2d 766, 773 (11 Cir. 1984). In assessing whether the fundamental fairness of the trial was compromised, the totality of the circumstances are to be considered in the context of the entire trial. <u>Hance v. Zant</u>, 696 F.2d 940 (11 Cir.), <u>cert. denied</u>, 463 U.S. 1210 (1983). "Such a determination depends on whether there is a reasonable probability that, in the absence of the improper remarks, the outcome of the trial would have been different." <u>Williams v. Weldon</u>, 828 F.2d 1018 (11 Cir.), <u>cert. denied</u>, 485 U.S. 964 (1988).

23

When this claim was raised in the state forum, the state court denied the claim, adopting the state's response, and concluding correctly that the prosecutor's testimony "did not go beyond the certification of predicate offenses necessary for habitualization." (DE#5:Ex.E). As noted previously in this Report, the foregoing holding was affirmed without explanation. <u>Brewster v. State</u>, <u>supra</u>.

The petitioner's generalized assertion that the prosecutor had a personal vendetta is unsubstantiated by the record. Moreover, the now challenged testimony was fair comment on the evidence presented at sentencing, which included certified copies of the petitioner's prior convictions in support of habitualization. Thus, no prosecutorial misconduct has been demonstrated. Counsel was not ineffective for failing to pursue this nonmeritorious argument in the state forum. Under these circumstances, the state appellate court's rejection of this claim is not in conflict with clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Relief must therefore be denied pursuant to 28 U.S.C. §2254(d). <u>Williams v. Taylor</u>, <u>supra</u>.

In **claim five**, the petitioner asserts that state court Judge Joe Wild was prejudiced and biased against the petitioner, and committed reversible error by denying the petitioner's request for substitute counsel, request for a continuance, motion for a directed verdict, and for failing to consider the PSI, and hold a separate habitual offender proceeding. (DE#1:11:Memo:17). None of the trial court's ruling either individually or cumulatively establish a bias or prejudice on the part of the judge.

Judicial misconduct denies a defendant a fair trial where the court exhibits "such a high degree of favoritism or antagonism as

24

to make fair judgment impossible." <u>Liteky v. United States</u>, 510 U.S. 540, 555 (1994). It is well established that "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality recusal motion." <u>Liteky v. United States</u>, 510 U.S. 540, 556 (1994); <u>see also</u>, <u>Byrne v. Nezhat</u>, 261 F.3d 1075, 1103 (11th Cir. 2001). Likewise, judicial remarks during the course of a proceeding--even those that are "critical or disapproving of, or even hostile to, counsel, the parties or their cases" -- will not ordinarily support a bias motion. <u>Liteky</u>, <u>supra</u> at 556. In <u>Liteky</u>, the Supreme Court explained that "a judge's ordinary efforts at courtroom administration--even a stern and short-tempered judge's ordinary efforts at courtroom administration--remain immune." <u>Id</u>. An allegation of impartiality must be supported by some factual basis, and a motion for recusal cannot be based on unsupported, irrational or highly tenuous speculation. <u>United States v. Cerceda</u>, 188 F.3d 1291 (11th Cir. 1999). Absent a showing of bias, the petitioner cannot prevail on this claim. There is absolutely no indication in the record of this case that such a situation existed here. Instead, as has been discussed in connection with other claims throughout this report, the petitioner's conviction was based on ample evidence presented at proceedings at which no reversible or constitutional errors occurred. Absent actual evidence, as opposed to mere speculation, that judicial bias was at work in his case, the petitioner's claim is without merit and should result in no relief.[6] Under these circumstances, no bias or due process violation has been established arising from the judge's presiding over the petitioner's

---

[6]Moreover, as noted in the state forum, under Florida law, a defendant has ten days after discovery of the facts underlying the motion for recusal within which to seek disqualification of a judge. <u>See</u> <u>Fla.Stat.</u> §38.10. Review of the record does not reveal any attempt by the petitioner excuse the untimely filing of his recusal motion. Thus, the trial court's denial on the basis that it was facially insufficient is also not in error. <u>See</u> <u>McGauley v. Goldstein</u>, 653 So.2d 1108, 1109 (Fla. 4 DCA 1995)(prohibition writ denied where defendant filed motion to disqualify judge more than ten days after grounds were made known to him).

case, and thus the state court's rejection of this claim should not be disturbed here.

Lastly, to the extent the petitioner appears to argue that he is entitled to a federal evidentiary hearing on his claims, that claim also warrants no habeas corpus relief here. If a habeas corpus petitioner "alleges facts that, if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of the claim." Holmes v. United States, 876 F.2d 1545, 1552 (11 Cir. 1989), quoting Slicker v. Wainwright, 809 F.2d 768, 770 (11 Cir. 1987). However, no hearing is required where the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous. Holmes, supra at 1553. Here, for the reasons which have been discussed, the petitioner's claims are all affirmatively contradicted by the existing record, so no federal hearing is necessary or warranted.

<u>Conclusion</u>

For the foregoing reasons, it is recommended that this petition for habeas corpus relief be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Signed this 1st day of March, 2008.

UNITED STATES MAGISTRATE JUDGE

```
cc:   David Kelly Brewster, Pro Se
      DC# 307539
      Zephyrhills Correctional Institution
      2739 Gall Blvd.
      Zephyrhills, FL 33541-9701

      Heidi L. Bettendorf, Ass't Atty Gen'l
      Office of the Attorney General
      1515 North Flagler Drive, #900
      West Palm Beach, FL 33401-3432
```