**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. 07-14205-CIV-MOORE/WHITE

**CLOSED**
**CIVIL**
**CASE**

DAVID BREWSTER,

     Petitioner,

vs.

UNITED STATES OF AMERICA,

     Respondent.

_____/

## ORDER PARTIALLY ADOPTING REPORT OF MAGISTRATE JUDGE; DENYING MOTION UNDER § 2254 TO VACATE, SET ASIDE, OR CORRECT SENTENCE

THIS MATTER came before the Court upon Plaintiff David Brewster's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2254 (dkt # 5).

THIS MATTER was referred to the Honorable Patrick A. White, United States Magistrate Judge. Magistrate Judge White issued a Report and Recommendation (dkt # 33), recommending that the motion be denied. Objections were filed on April 30, 2008 (dkt # 36).

UPON CONSIDERATION of the Report and Recommendation, after a de novo review of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

## I.    BACKGROUND

Petitioner David Brewster ("Brewster") was convicted under Florida's bank fraud statute, § 655.0322(6), for passing three bad checks. The checks were associated with an account Brewster held at SunTrust Bank ("SunTrust") that was closed in March of 2002, a number of months before Brewster passed the bad checks. Brewster gave the first check to Perry Wright in the amount of $1475 for a deposit on a condominium rental. Brewster gave the second check for $190 to Mary Mazzarella in August of 2002 for a storage unit rental. The third check was given to Nancy Sapey in the amount of $2200 for a deposit on a condominium rental. Brewster was subsequently convicted of violating Florida's bank fraud statute and was sentenced as a habitual offender to seven years imprisonment followed by eight years of probation.

A detailed account of the procedural history was included in Judge White's Report and Recommendation (dkt # 33) and is incorporated herein by reference.

## II.    ANALYSIS

Section 655.0322(6), Florida Statutes, states, in relevant part:

Any person who knowingly executes, or attempts to execute, a scheme or artifice to defraud a financial institution . . . or to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution . . . by means of false or fraudulent pretenses, representations, or promises, is guilty of a felony of the second degree.

§ 655.0322(6), Fla. Stat. Florida's appellate courts have never had occasion to interpret this statute.

However, § 655.0322(6), Fla. Stat., was modeled on the federal bank fraud statute, 18 U.S.C.

§ 1344. Section 1344 states, in relevant part:

Whoever knowingly executes, or attempts to execute, a scheme or artifice - -

        (1) to defraud a financial institution; or

        (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;

shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344. The federal bank fraud statute was enacted to "protect [ ] the financial integrity of [financial] institutions, and . . . assure a basis for Federal prosecution of those who victimize these banks through fraudulent schemes. U.S. v. Stavroulakis, 952 F.2d 686, 694 (2d Cir. 1992) (quoting S.Rep. No. 225, 98TH CONG., 2d Sess. 377 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3517). In the wake of the savings and loan debacle, most members of Congress singled out bank fraud as a primary contributing cause. *See* Heidi Huntington Mayor et al., *Financial Institutions Fraud, Ninth Survey of White Collar Crime*, 31 Am. Crim. L. Rev. 647, 649-50 (1994). Upon passage of the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA"), there was little opposition to dramatically increasing criminal penalties for bank fraud. Id. The maximum fine was increased from $10,000 to $1,000,000 and the maximum prison sentence was increased from five to

twenty years (later increased to thirty years). Id.

Section 1344 has been utilized to punish activities including "check-kiting, check forging, false statements on loan applications and in negotiations with banks, sales of stolen checks, unauthorized automatic teller machine use, credit card fraud, bank mail theft, student loan fraud, and bogus transactions between offshore 'shell' banks and domestic banks." Mayor, supra, 31 Am. Crim. L. Rev. at 652-53 (internal citations omitted).  As reflected by the language of both § 1344 and § 655.0322(6), Fla. Stat., these statutes establish two distinct offenses, differentiated by the type of scheme or artifice required.  The scheme or artifice employed must either seek to (1) defraud a financial institution, or (2) seek to obtain the financial institution's moneys, funds, etc., by means of false or fraudulent pretenses, representations, or promises.

Section 1344 has been used extensively to prosecute check-kiting, which involves the "continuous interchange of worthless checks between at least two accounts at separate banks and involves covering overdrafts with deposits of checks creating overdrafts at other banks."  Henry J. Bailey & Richard B. Hagedorn, Brady on Bank Checks: The Law of Bank Checks, § 19.08.[1] Federal courts have held that check-kiting constitutes a violation § 1344(1) because its purpose is to defraud the bank by deceiving it into distributing funds based on the mistaken belief that a demand is supported by adequate funds.  See U.S. v. Frydenlund, 990 F.2d 822, 824 (5th Cir. 1993); U.S. v. Sayan, 968 F.2d 55, 61 n.7 (D.C.Cir. 1992); U.S. v. Doherty, 969 F.2d 425, 429 (7th Cir. 1992); U.S. v. Stone, 954 F.2d 1187, 1189-91 (6th Cir. 1992); U.S. v. Falcone, 934 F.2d 1528, 1540 (11th Cir. 1991) (per curiam), reh'g granted & opinion vacated, 939 F.2d 1455 (11th Cir. 1991), opinion reinstated on reh'g, 960 F.2d 988 (11th Cir.) (en banc); U.S. v. Fontana, 948 F.2d 796, 802 (1st Cir.

---

[1] "[A] check-kiting scheme typically works as follows: 'The check kiter opens an account at Bank A with a nominal deposit. He then writes a check on that account for a large sum, such as $50,000.  The check kiter then opens an account at Bank B and deposits the $50,000 check from Bank A in that account.  At the time of deposit, the check is not supported by sufficient funds in the account at Bank A.  However, Bank B, unaware of this fact, gives the check kiter immediate credit on his account at Bank B.  During the several-day period that the check on Bank A is being processed for collection from that bank, the check kiter writes a $50,000 check on his account at Bank B and deposits it into his account at Bank A.  At the time of the deposit of that check, Bank A gives the check kiter immediate credit on his account there, and on the basis of that grant of credit pays the original $50,000 check when it is presented for collection.  By repeating this scheme, or some variation of it, the check kiter can use the $50,000 credit originally given by Bank B as an interest-free loan for an extended period of time.'" Williams v. U.S., 458 U.S. 279, 281 n.1 (1982).

1991); U.S. v. Celesia, 945 F.2d 756, 758-59 (4th Cir. 1991); U.S. v. Schwartz, 899 F.2d 243, 246-47 (3d Cir. 1990); U.S. v. Bonnett, 877 F.2d 1450, 1454-56 (10th Cir. 1989).

Courts have also held that check-kiting does not constitute a violation of 1344(2) because depositing a check unsupported by sufficient funds that is otherwise legitimate is not a fraudulent representation, given that a check makes no representation as to the sufficiency of the funds on which it is drawn. U.S. v. LeDonne, 21 F.3d 1418, 1425-26 (7th Cir. 1994); U.S. v. Falcone, 934 F.2d 1528, 1540 (11th Cir. 1991) (per curiam), *reh'g granted & opinion vacated*, 939 F.2d 1455 (11th Cir. 1991), *opinion reinstated on reh'g*, 960 F.2d 988 (11th Cir.) (en banc); U.S. v. Celesia, 945 F.2d 756, 758 (4th Cir. 1991); U.S. v. Medeles, 916 F.2d 195, 199-200 (5th Cir. 1990); U.S. v. Cronic, 900 F.2d 1511, 1516 (10th Cir. 1990) *see* U.S. v. Ragosta, 970 F.2d 1085, 1088-89 (2d Cir. 1992); *see also* Williams v. United States, 458 U.S. 279, 284-85 (1982) (finding that depositing a check drawn on insufficient funds is not a false statement because the check does not "make any representation as to the state of the account holder's bank balance").

Although the federal bank fraud statute has been relied on extensively in check-kiting cases, it is not applicable to ordinary cases of passing bad checks. U.S. v. Brandon, 298 F.3d 307, 313 (4th Cir. 2002) (stating that "a routine bad check case does not come within the scope of § 1344 . . . [where] the drawee bank refuses to honor the check for lack of sufficient funds"); U.S. v. Jacobs, 117 F.3d 82, 92-93 (2d Cir. 1997) (stating that a scheme to pass bad checks is not bank fraud under § 1344); U.S. v. Cavin, 39 F.3d 1299, 1308 (5th Cir. 1994) (stating that writing a bad check does not constitute bank fraud); U.S. v. Orr, 932 F.2d 330, 332 (4th Cir. 1991) (stating that § 1344 was not intended to create a federal bad check law).

However, while bank fraud cannot arise solely from passing bad checks, bank fraud may be based on passing bad checks if there are (1) additional facts evincing a scheme to defraud a financial institution or to obtain its assets by false or fraudulent pretenses, and (2) risk of loss to the financial institution. *See* U.S. v. Reaume, 338 F.3d 582 (6th Cir. 2003). When "the drawer has simply overdrawn the account, the government must present other facts evincing an intent to victimize the

4

financial institution to sustain a bank fraud charge under § 1344." U.S. v. Morganfield, 501 F.3d 453, 465 (5th Cir. 2007) (quotation marks omitted) (finding bank fraud where, in addition to passing bad checks, defendants presented banks with false business certificates, false identification, and signed checks in the name of non-existent individuals); U.S. v. Reaume, 338 F.3d 577, 579-580 (6th Cir. 2003) (finding bank fraud where defendants passed bad checks from accounts they had established by providing false identifications to the bank); U.S. v. Antonelli, No. 98-3434, 2000 WL 1205993, at *1 (7th Cir. 2000) (finding bank fraud where defendants passed bad checks from accounts set up by giving banks bogus names, falsified identifications and fictitious social security numbers); U.S. v. Jacobs, 117 F.3d 82, 92-93 (2d Cir. 1997) (finding bank fraud where defendant sold fictitious certified drafts to third-parties with instructions that they present the fictitious drafts to their banks in exchange for discharge of their debts).

Bank fraud also requires that the scheme or artifice be executed knowingly. 18 U.S.C. § 1344. In cases where passing bad checks has been found to constitute bank fraud because there are additional facts evincing a scheme to defraud a financial institution, courts have relied on risk of loss to the financial institution to demonstrate intent to defraud. U.S. v. De La Mata, 266 F.3d 1275, 1298 (11th Cir. 2001) (finding that in cases where a scheme is directed at a non-bank third-party, risk of loss is one way of establishing intent to defraud a bank); U.S. v. Brandon, 17 F.3d 409, 426 (1st Cir. 1994) (finding that demonstrating risk of loss is sufficient to satisfy the intent requirement of the bank fraud statute). When a bank is presented with a check supported by insufficient funds, the bank is exposed to risk of loss because the bank has a choice to pay the check or dishonor it. Morganfield, 501 F.3d at 465; Reaume, 338 F.3d at 581.

Here, Brewster passed three bad checks. However, the circumstances under which Brewster procured and passed these checks do not evince a scheme to defraud a financial institution or to obtain its assets by false or fraudulent pretenses. When opening the checking account associated with the bad checks, Brewster did not provide the bank with fake name, falsified identification, false social security number or fake business information. The checks did not include forged signatures or

5

altered dollar amounts and the checks themselves were not forged or stolen. Nor did Brewster try to obtain funds from SunTrust by depositing the checks in an attempt to create the false impression that he maintained a balance that did not in fact exist. The account was simply a checking account established in his own name based on accurate personal information. Therefore, although the checks were not supported by sufficient funds, there are no additional facts evincing a scheme to defraud.

Furthermore, SunTrust was never at risk of loss. Cases holding that passing a bad check creates a risk of loss to a financial institution have done so on the basis that the banks at issue, when presented with an insufficiently funded check, had a policy of deciding whether to pay the check or dishonor it. Morganfield, 501 F.3d at 465; Reaume, 338 F.3d at 581. In Morganfield and Reume, the Courts found risk of loss based on testimony presented at trial that it was the policy of the banks to decide whether to pay a check unsupported by sufficient funds or to dishonor it. Morganfield, 501 F.3d at 465; Reaume, 338 F.3d at 581. Given the commonplace banking practice of creating an overdraft by paying an insufficiently funded check and charging an overdraft fee, a jury might reasonably infer a risk of loss even in the absence of testimony concerning a bank's specific policy. Here, no evidence was presented that SunTrust would consider paying a check associated with an account that had already been closed for a significant period of time. Moreover, no such inference is warranted with respect to a closed account. Therefore, SunTrust was not exposed to risk of loss.

Risk of loss to cannot be supported by the mere theoretical possibility that SunTrust might have paid the checks in error. The purpose of assessing risk of loss in the first instance is to aid in making a determination concerning a defendant's intent to defraud a financial institution. In cases where a bank is the target of a scheme to defraud, intent is evident from the nature of the scheme or from actual losses sustained by the bank. However, in cases where a bank is not the primary target of the scheme and no actual losses have occurred, courts have found risk of loss to be a sufficient indicator that a defendant had the requisite intent to defraud a financial institution. Thus, risk of loss is one of the primary factors that distinguishes bank fraud from ordinary cases of passing bad checks. De La Mata, 266 F.3d at 1298; Brandon, 17 F.3d at 426. However, when risk of loss is based solely

6

on a probability that is virtually non-existent, such a negligible risk is insufficient to demonstrate an intent to defraud a financial institution. To find otherwise would defeat the purpose of relying on risk of loss as an indicator of intent and substantially eliminate the difference between passing a check written upon insufficient funds and federal bank fraud, which is contrary to the purpose of the bank fraud statute. *See* Orr, 932 F.2d at 332.

Although Brewster passed three bad checks, there are no additional facts evincing a scheme to defraud and SunTrust was never at risk of loss. Therefore, Brewster's acts do not constitute bank fraud under the federal bank fraud statute. Of course, the interpretation ascribed by federal courts to the federal bank fraud statute is not binding on Florida's state courts. However, 18 U.S.C. § 1344 is substantively identical to § 655.0322(6) with the exception of the financial institutions to which it applies. Moreover, the great volume of federal cases interpreting § 1344 and the overwhelming consensus reached by federal courts concerning its proper interpretation provides a compelling point of reference concerning the meaning that may properly be ascribed to the plain language of the statutes.

Furthermore, § 1344 is comprised of two parts which criminalize two types of conduct. Section 1344(1) concerns a scheme to defraud a financial institution, and § 1344(2) concerns a scheme to obtain its assets by false or fraudulent pretenses. The statute is disjunctive and conduct satisfying the elements of either is sufficient to warrant conviction. Section § 655.0322(6), Fla. Stat., is also disjunctive. In this case, however, the jury charge was conjunctive. The jury charge stated:

> [T]he state must prove the following four elements beyond a reasonable doubt. Number one, David Brewster engaged in a systematic ongoing [ ] course of conduct. Number two, David Brewster did so with either the intent to defraud a financial institution or the intent to obtain or attempt to obtain property, monies, funds or credits from a financial institution. Number three, David Brewster's course of conduct involved fraudulent pretenses, promises or representations. Number four, SunTrust Bank is a [ ] financial institution.

Brewster Trial Tr. at 190, December 27, 2004 (dkt # 26-4). Therefore, Brewster's conduct must have satisfied all elements of both disjunctive portions of § 655.0322(6) because the government assumed the burden of proving more than the statute required. U.S. v. Staples, 435 F.3d 860, 866

7

(holding that where jury instructions included elements of §1344(1) and § 1344(2), the instructions became the law of the case); <u>Alphamed Pharm. Corp. v. Arriva Pharm., Inc.</u>, 532 F.Supp.2d 1319, 1355 n.53 (S.D.Fla. 2006) (stating that jury instructions including elements not found in the statute become the law of the case); <u>State v. Hamilton</u>, 574 So.2d 124, 126 n.5 (Fla. 1991) (stating that the jury must get their instructions as to the law of the case from the court). In other words, Brewster's conduct must have constituted a scheme to defraud a financial institution *and* to obtain or attempt to obtain its property by false or fraudulent pretenses, as well as satisfying the intent requirement. However, as discussed above, Brewster's conduct does not satisfy either portion of the bank fraud statute.

In order to be found guilty in state court of both portions of Florida's bank fraud statute, a court would have to find that passing bad checks to a third-party, without more, constitutes both a scheme to defraud a financial institution and a scheme to obtain its assets by false or fraudulent pretenses. Such a finding would necessitate a holding that a check based on insufficient funds is, of itself, a misrepresentation to a financial institution and an attempt to wrongfully obtain its assets. This holding would eradicate any distinction between bank fraud and an ordinary case of passing a bad check. Indeed, every Florida citizen that passes more than a single check based on insufficient funds during an indeterminate period of time would be subject to conviction for bank fraud. This finding would be contrary to the apparent intent of Florida's legislature, which has long since enacted a statute dealing specifically with passing bad checks. § 832.05, Fla. Stat. Indeed, § 832.05(4) deals with precisely the conduct at issue here. For a court to find that § 655.0322(6) is merely an alternative statute to criminalize the same acts covered by § 832.05(4), it would have to conclude that the Florida legislature intended the same conduct to constitute either a first degree misdemeanor or third degree felony under § 832.05(4), or a second degree felony under § 655.0322(6). Such a finding would be contrary to the plain language of § 655.0322(6) and inconsistent with the manifest intent of Florida's legislature.

If Brewster were in federal custody based on violations of the federal bank fraud statute,

8

there is no question that he would be entitled to habeas relief with respect to the bank fraud conviction.[2]  However, a federal court may not grant habeas relief for a prisoner in state custody unless a matter that was adjudicated on the merits in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  Here, there is no federal law at issue, nor was there an unreasonable determination of the facts in light of the evidence.  The crux of Brewster's claim is not that the factual findings concerning his conduct were erroneous, but that Florida's bank fraud statute does not encompass those acts.  Such a finding is purely a matter of statutory interpretation of Florida law and cannot be reviewed by this Court.  Therefore, Brewster is constrained to seek relief in the courts of the State of Florida.

III.   **CONCLUSION**

Based on the foregoing, it is

ORDERED AND ADJUDGED that Plaintiff David Brewster's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2254 (dkt # 5) is DENIED.  The Clerk of the Court is ordered to CLOSE this case.  All pending motions are DENIED AS MOOT.  It is further

ORDERED AND ADJUDGED that Magistrate Judge White's Report and Recommendation (dkt # 18) is ADOPTED IN PART, with respect to claims two, three, four and five.

DONE AND ORDERED in Chambers at Miami, Florida, this _14th_ day of May, 2008.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc:   United States Magistrate Judge White
      All Counsel of Record

---

[2] This proposition assumes the absence of any procedural bar to granting relief.